A02A0624. SMITH v. THE STATE.
(565 SE2d 904)

MIKELL, Judge.

A Clayton County jury convicted Ulysses Smith of two counts of theft by taking. Smith was sentenced as a recidivist under OCGA § 17-10-7 (c) because of his three prior felony convictions.[1] On appeal, Smith contends that his conviction should be reversed because his trial counsel was ineffective, the evidence was insufficient to support his conviction, and the trial court erred in its charge to the jury on intent. For reasons which follow, we affirm.

"On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses."[2] Construed in the light most favorable to the verdict, the evidence shows that on February 6, 1999, Smith opened an individual retirement account with a $100 deposit at the Jonesboro Corners branch of SunTrust Bank, which was located in a Publix supermar-

---

[1] Appellant's brief states that he was convicted of three counts of theft by taking. However, the verdict form and sentencing sheet show that Smith was tried on three counts of theft by taking, but convicted on only two of those counts.

[2] (Citations and punctuation omitted.) *James v. State,* 227 Ga. App. 907, 908 (1) (490 SE2d 556) (1997).

ket. Toeanzar Anderson, who worked as a financial service representative at that branch, testified that she opened the account for Smith. Smith told her that his former employer, Bearings & Drive, would be sending a check for deposit into his account from his retirement fund. Anderson testified that within the next few days she received the check from Bearings & Drive in the amount of $5,106.47. She contacted Smith, he came in and endorsed the check, and it was deposited into his IRA on February 18, 1999. Anderson gave Smith the deposit receipt and told him that the funds would be available for withdrawal on the following day.

On February 19, 1999, Smith returned to the bank and withdrew $5,100. Because the deposit from the previous day had not yet posted to Smith's account, the debit for the withdrawal could not be posted. Nevertheless, the bank permitted the withdrawal because Anderson had witnessed Smith's deposit the previous day. Anderson testified that when she next tried to post the $5,100 debit, she was still unable to do so because the deposit had not yet posted. She never posted the debit to Smith's account, but noticed later that some additional withdrawals had been made. When she next saw Smith at the Publix supermarket where the bank was located, she told him that too much money had been withdrawn from his account. Smith said the money had already been spent but he would stop by to try to clear up the problem. He never did.

Michael Zachary, SunTrust's fraud investigator, began to investigate Smith's account on November 8, 1999. Zachary testified that the bank's records revealed that after the $5,100 withdrawal on February 19, 1999, Smith withdrew $150 on March 2, 1999, $4,000 on March 5 from a different branch, $1,000 on April 16 from another branch, and $164.42 on April 17 from yet another branch. Smith's account did not have funds to cover any of these subsequent withdrawals as there were no additional deposits made to the account after the check from Bearings & Drive.

Zachary admitted that the failure to debit the initial withdrawal was the bank's clerical error. After discovering this error, a letter addressing the error was sent via certified mail to Smith's wife at her place of employment, Arnold Elementary School. The return receipt showed that the letter was delivered on November 12, 1999, and that it had been signed by someone at the school.

1. In Smith's first enumeration of error, he claims that his trial counsel's performance was defective because she failed to present Smith's defense that he believed his employer had matched his 401k funds and failed to interview any of the state's witnesses and other material witnesses before trial. We disagree.

To establish ineffectiveness, [Smith] must show (1) that counsel's performance was deficient, and (2) that this deficiency so prejudiced his defense that a reasonable possibility exists that the trial's result would have been different but for that deficiency. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.[3]

Furthermore, "A court . . . is not required to address the performance portion of the inquiry before the prejudice component or even to address both components if the defendant has made an insufficient showing on one."[4]

Rosalind Watkins was appointed to represent Smith approximately six months before his trial began. Watkins found a variance in Smith's indictment, which after the filing of the proper motions, resulted in the dismissal of Smith's case and forced the state to reindict the case. Watkins testified that she talked to Smith at least ten times before the trial. Though Smith told her that he thought he may have received funds from his 401k plan with Bearings & Drive, he also said that he was not familiar with their matching program or savvy in financial matters or banking transactions. Watkins contacted Lois Lund, who was the retirement plan administrator at Bearings & Drive and was told that Smith either had not worked at the company long enough or had not deposited enough money in his 401k to become eligible for matching. When Watkins informed Smith of what she had learned, he told her that since he heard of other people getting their funds matched, he thought that his would be matched too.

In his appellate brief, Smith argues that he should have been informed of his right to testify so he could have presented his defense. Watkins testified that she talked to Smith about the advantages and disadvantages of him testifying on his own behalf. Watkins told him that she did not think it would be a good idea, but that ultimately, it was his decision. The trial court was authorized to believe Watkins' testimony,[5] especially since it was the only evidence before it regarding whether Smith should testify.

Smith also argues that Watkins should have interviewed other witnesses from Bearings & Drive to validate the basis for his belief

---

[3] (Punctuation and footnotes omitted.) *Lovelace v. State*, 241 Ga. App. 774, 775 (3) (527 SE2d 878) (2000).

[4] (Citation and punctuation omitted.) *Green v. State*, 240 Ga. App. 650, 652-653 (3) (523 SE2d 632) (1999).

[5] *Parker v. State*, 226 Ga. App. 462, 466 (8) (486 SE2d 687) (1997).

that employers typically match 401k funds. Watkins knew from the plan administrator that Smith was not eligible for matching. Smith did not give her a list of witnesses to call in his defense. Furthermore, Watkins testified that Smith was never certain that his funds had been matched.

Though Watkins admitted that she did not interview the bank employees, she tried to do so. She testified that when she traveled to the Jonesboro Corners branch to interview Anderson, she was told that Anderson did not work there and that they did not know how to locate her. Watkins had the statements of the bank employees at branches where Smith made subsequent withdrawals and tried to call them to no avail. Watkins tried to contact the bank employee who discovered the error in Smith's account. Instead, she spoke with Geneva Perez, who worked in the records department. Watkins served a subpoena requesting all documents relating to Smith's account, and after she did not receive them in a timely manner, requested and was granted a continuance by the court to afford her the opportunity to inspect these records. Perez finally sent her Smith's bank statements. Watkins also testified that she extensively reviewed the documents that Zachary compiled.

Even if we assume that the failure to interview the state's witnesses constituted deficient performance, Smith has not shown how interviewing the witnesses would have changed the outcome of the trial. Through cross-examination of the state's witnesses, Watkins was able to show that the failure to debit Smith's initial withdrawal was the bank's error; that each employee should have verified the funds availability before allowing Smith to make subsequent withdrawals; and that each time Smith made a withdrawal, the bank's system showed that the funds were available. Thus, the jury had evidence from which it could have inferred that Smith simply made a mistake by relying on the availability of the funds at the bank. Furthermore, Smith never identified other witnesses who he now claims could have supported his defense. Because Smith has failed to show how the outcome would have been different, we cannot find that Watkins' failure to interview the witnesses constituted ineffective assistance of counsel.[6]

2. In his next enumeration of error, Smith argues that the evidence was insufficient to support his conviction. We disagree.

The elements of theft by taking relevant to this case are (1) an unlawful taking of property of another (2) with the intention of withholding the property without justification permanently or tempora-

---

[6] *Lovelace*, supra at 776 (3) (b).

rily.[7] The evidence shows that Smith made an initial deposit to open the bank account and completed the paperwork necessary to deposit the check from Bearings & Drive. Yet, he made withdrawals which far exceeded the amounts he knew had been deposited. Furthermore, when he was told by Anderson that his withdrawals exceeded his account balance, he told her that he had spent the money but would stop by to try to clear up the discrepancy. Accordingly, we find the evidence sufficient to support his conviction under the standard set forth in *Jackson v. Virginia*.[8]

3. Lastly, Smith argues that the trial court erred by charging the jury that intent may be inferred when it is the natural and probable consequence of the act because the charge improperly shifts the burden of proof onto the defendant as to intent. Again, we disagree.

We note first that Smith failed to preserve this error for review. The court charged as follows:

> Intent is an essential element of any crime and must be proved by the State beyond a reasonable doubt. Intent may be shown in many ways provided you, the jury, believe that it existed from the proven facts before you. It may be inferred from the proven circumstances or by acts and conduct, or it may be, in your discretion, inferred when it is the natural and necessary consequence of the act. Whether or not you draw such an inference is a matter solely within your discretion. Criminal intent does not mean an intention to violate the law or to violate a penal statute, but means simply to intend to commit the act which is prohibited by a statute.

At the end of the charge, the court asked if defense counsel had any objections, and she replied that she did not. By failing to object to the charge or to preserve objections for review upon direct request by the trial court, trial counsel waived any challenge to the trial court's charge.[9] Nevertheless, had trial counsel objected to the charge, we would still find Smith's argument meritless as the charge is a proper statement of the law.[10]

Smith's reliance on *Harris v. State*[11] in support of his argument is misplaced. *Harris* specifically involved the charge that the jury

---

[7] See OCGA § 16-8-2.

[8] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[9] *Bacon v. State*, 249 Ga. App. 347, 349 (2) (548 SE2d 78) (2001).

[10] Suggested Pattern Jury Instructions, Vol. II: Criminal Cases; see *Hodges v. State*, 249 Ga. App. 268, 272-273 (6) (547 SE2d 386) (2001).

[11] 273 Ga. 608 (543 SE2d 716) (2001).

may infer the intent to kill from the use of a deadly weapon.[12] The Supreme Court held that "giving [the use] of [the] deadly weapon charge is error"[13] and instructed the trial courts to use a simple charge on intent.[14] Thus, *Harris* is inapposite here.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED MAY 30, 2002 — 

*Sexton & Morris, Joseph S. Key, Patricia F. Angeli*, for appellant.
*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.

---

[12] Id. at 609 (2).
[13] (Punctuation omitted.) Id. at 610 (2).
[14] Id.