[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11156

_____

Agency No. A091-146-392

WINSOME ELAINE VASSELL,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 21, 2016)

Before WILSON and MARTIN, Circuit Judges, and RODGERS,[*] District Judge.

MARTIN, Circuit Judge:

The opinion issued by this panel in this case on June 13, 2016 is withdrawn,

and this opinion is issued in its place.  In our earlier opinion, this Court reversed

_____

[*] Honorable Margaret C. Rodgers, United States District Chief Judge for the Northern
District of Florida, sitting by designation.

the holding of the Board of Immigration Appeals (BIA) that Winsome Vassell's

conviction under O.C.G.A. § 16-8-2 was a "theft offense" as that term is defined

under 8 U.S.C. § 1101(a)(43)(G).  The panel opinion expressly granted Ms.

Vassell's Petition for Review, but the panel is now advised that the BIA does not

deem this Court's June 13, 2016 opinion sufficient to require it to accept Ms.

Vassell's case on remand.  The panel is therefore reissuing this opinion to make

clear that in addition to granting Ms. Vassell's petition, we are REMANDING this

case to the BIA for further proceedings consistent with this Court's ruling in its

June 13, 2016 opinion, which is restated in this opinion reissued today.

The BIA ruled that Ms. Vassell is deportable because she pleaded guilty to

"theft by taking" in violation of Georgia Code § 16-8-2.  Mrs. Vassell filed a

petition for review saying that this crime is not "a theft offense" as that term is

used in the Immigration and Nationality Act's (INA) list of grounds for

deportation.  Whether a state theft conviction is "a theft offense" for the INA turns

on whether the state offense contains the elements of the generic definition of theft.

Mrs. Vassell says Georgia "theft by taking" doesn't require property to be taken

"without consent," as is required for generic theft.  The BIA initially took this view

too, so it ruled that Mrs. Vassell's § 16-8-2 violation was not "a theft offense."

The BIA had held the same about § 16-8-2 in cases before Mrs. Vassell's, and it

has continued to do so after.  But after its initial ruling, a BIA official granted a

2

motion to reconsider in Mrs. Vassell's case and ruled the second time around that the crime is generic theft. Mrs. Vassell's appeal therefore requires us to consider how to treat inconsistent rulings by the BIA on the same question presented in different cases.

The government defends the BIA's last ruling in Mrs. Vassell's case, though it concedes nearly everything that we need to know to decide this view is wrong. First, the government concedes that generic theft contains a "without consent" element. The government also concedes that the Georgia offense "criminalizes the conduct of obtaining another's property by consent fraudulently obtained." All the government disputes is whether theft based on taking property through fraudulently obtained consent is "without consent." This isn't much of an open question though, because the BIA answered no to it years ago in a published opinion. We thus grant Mrs. Vassell's petition.

I.

Mrs. Vassell is a citizen of Jamaica who became a lawful permanent resident of the United States in 1990. In 2013, Mrs. Vassell pleaded guilty to "theft by taking" in violation of Georgia Code § 16-8-2 based on charges that she took merchandise from a department store while working at the store. An immigration judge held that this crime made her deportable because it was "a theft offense" as that term is used in the INA. The BIA first reversed that decision, holding that

3

Georgia "theft by taking" is not generic theft because it doesn't require "lack of consent of the victim."   The government then asked the BIA to reconsider.  This second time around, the BIA ruled that Georgia "theft by taking" does require lack of consent of the victim.  The BIA ordered Mrs. Vassell to return to Jamaica.

## II.

"[W]e have jurisdiction to decide in a petition for review proceeding whether the BIA erred in determining that a petitioner's conviction is an aggravated felony." Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1360 (11th Cir. 2005).  When deciding this question we owe deference to the BIA's interpretations of the INA to the extent its readings are reasonable.  See id. at 1361.  However, we owe no deference to unpublished single-member BIA decisions (like the BIA's final order in this case) unless they are "consistent with other decisions rendered by the BIA." Donawa v. U.S. Att'y Gen., 735 F.3d 1275, 1279 n.2 (11th Cir. 2013).  We also owe no deference to the BIA's views on state law.  Instead we "are bound to follow any state court decisions that define or interpret the statute's substantive elements." United States v. Howard, 742 F.3d 1334, 1346 (11th Cir. 2014).

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).  The term "aggravated felony" includes "a theft offense (including receipt of stolen property)." Id. § 1101(a)(43)(G).  Because the INA doesn't define "a theft

4

offense," courts use "the generic definition of theft." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 189, 127 S. Ct. 815, 820 (2007).  To determine whether a state offense meets that definition, we apply what is called the "categorical approach." Moncrieffe v. Holder, __ U.S. __, __, 133 S. Ct. 1678, 1684 (2013).  This approach compares the generic offense to the "minimum conduct criminalized by the state statute."  Id.  "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense."  Id. (quotation omitted and alterations adopted).

Generic theft is "the taking of, or exercise of control over, property without consent whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent."  In re Garcia-Madruga, 24 I. & N. Dec. 436, 440–41 (BIA 2008).  Mrs. Vassell was convicted under Georgia Code § 16-8-2, which reads: "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."  O.C.G.A. § 16-8-2.  Mrs. Vassell says this crime lacks the "without consent" element required for generic theft.  We must therefore answer two questions.  First, what does the generic definition of theft's "without consent" require?  Second, does the Georgia offense contain that element?

5

A.

The BIA's final order in this case simply held that § 16-8-2 requires some lack of consent, without explaining what exactly the generic "without consent" element means. However, the BIA explained years ago that this element serves to distinguish theft from fraud. See Garcia-Madruga, 24 I. & N. Dec. at 438. Garcia-Madruga was the first published BIA opinion to include a "without consent" element in the agency's definition of "a theft offense." Because Garcia-Madruga added this element to the BIA's definition, our analysis of what the element requires starts with that opinion.

Garcia-Madruga explained that the BIA added the "without consent" element in order to distinguish theft offenses from fraud offenses. These two types of offenses must be kept separate because the INA has different requirements for each. See id. at 439. Fraud is a deportable offense only if it causes a loss of more than $10,000. 8 U.S.C. § 1101(a)(43)(M)(i). But theft is a deportable offense no matter the value of the stolen property. Id. § 1101(a)(43)(G). Since fraud and theft can both involve obtaining property unlawfully, the fact that a state calls an offense "theft" doesn't mean the offense actually meets the definition of generic theft. To give meaning to the INA's distinct requirements for theft and fraud crimes, there must be an element that separates the two crimes.

6

The BIA thus added the "without consent" element to the generic definition of theft. According to the government's brief, this change was in response to "criticism from several courts." Specifically, "every Federal court of appeals to have addressed the meaning of 'theft offense' under section 101(a)(43)(G) ha[d] determined that it necessarily includes the requirement that the property have been obtained from its owner 'without consent.'" Garcia-Madruga, 24 I. & N. Dec. at 438. The Supreme Court also applied that same definition "with apparent approval." Id. The BIA joined those courts and explained how the "without consent" element distinguishes theft from fraud by quoting this passage from the Fourth Circuit's decision in Soliman v. Gonzales, 419 F.3d 276 (4th Cir. 2005):

> When a theft offense has occurred, property has been obtained from its owner "without consent"; in a fraud scheme, the owner has voluntarily "surrendered" his property, because of an "intentional perversion of truth," or otherwise "act[ed] upon" a false representation to his injury. The key and controlling distinction between these two crimes is therefore the "consent" element – theft occurs without consent, while fraud occurs with consent that has been unlawfully obtained.

Id. at 282 (quoting Black's Law Dictionary (6th ed. 1951)) (emphasis added).[1]

Soliman isn't the only Court of Appeals case to stress that the "without consent" element distinguishes theft from fraud. The Fifth Circuit has endorsed Soliman's reasoning on this distinction. See Martinez v. Mukasey, 519 F.3d 532,

---

[1] Soliman quoted this 1951 dictionary to analyze how the terms "theft" and "fraud" "were commonly used at the time of the [INA's] adoption in 1952." Soliman, 419 F.3d at 282.

7

540 (5th Cir. 2008).  And the Fourth Circuit relied on Solimon to hold that Virginia larceny is not "a theft offense" because it "treats fraud and theft as the same for larceny purposes, but the INA treats them differently."   Omargharib v. Holder, 775 F.3d 192, 197 (4th Cir. 2014).  And the Third Circuit cited Soliman as a reason to overrule its previous approach to defining "a fraud offense." Al-Sharif v. U.S. Citizenship & Immigration Servs., 734 F.3d 207, 211–12 (3d Cir. 2013) (en banc). No court appears to have criticized Soliman's reasoning.

As for the BIA, Garcia-Madruga made the agency's agreement with Soliman on this point very clear:

> [W]e are in substantial agreement with Soliman v. Gonzales, that the offenses described in sections 101(a)(43)(G) and (M)(i) of the [INA] ordinarily involve distinct crimes.  Whereas the taking of property without consent is required for a section 101(a)(43)(G) "theft offense," a section 101(a)(43)(M)(i) "offense that involves fraud or deceit" ordinarily involves the taking or acquisition of property with consent that has been fraudulently obtained.

24 I. & N. Dec. at 440 (citation omitted).[2]  The Soliman opinion went into even more detail on this point:

---

[2] Garcia-Madruga did however warn that the BIA wasn't adopting every aspect of Soliman, which defined both theft and fraud.  The BIA explained that "the definition in Soliman v. Gonzales of a fraud offense is not before us, and we need not decide whether it is sufficiently inclusive."  24 I. & N. Dec. at 440 n.5 (citation omitted).  The "definition . . . of a fraud offense is not before us" here either because the BIA didn't say Mr. Vassell's crime was "a fraud offense."  Garcia-Madruga further added that the BIA was also not deciding whether theft by coercion or extortion is "without consent."  See id.  The BIA then addressed this question a year later.  In re Cardiel-Guerrero, 25 I. & N. Dec. 12, 20–21 (BIA 2009).  Our analysis today is limited to the issue analyzed in Garcia-Madruga: whether theft through consent obtained using

> In order to give proper effect to the intention of Congress that theft and fraud offenses are to be treated differently for purposes of an "aggravated felony" issue, a proper definition of the term "theft offense" must distinguish between such an offense and a fraud scheme.  And the key distinction on that point is the "without consent" element, present in the classic definition of a theft offense. . . . [T]he BIA's definition of "theft offense" makes the fraud provision of Subsection (M)(i) superfluous, and it results in an outcome that is contrary to Congress's explicit inclusion of a $10,000 threshold for fraud offenses into Subsection (M)(i)—transforming all fraud offenses into theft offenses, and thus also into aggravated felonies under § 1101(a)(43).

419 F.3d at 283.

Though Garcia-Madruga does not bind us, it bound the BIA in Mrs. Vassell's case.  And Garcia-Madruga makes clear that the BIA added the "without consent" element in order to separate theft and fraud.  The question then is where this element draws a line between the two offenses.  After all, every fraud that results in a victim losing his or her property to someone else involves a taking or appropriation of property with some lack of consent.  But Garcia-Madruga and Soliman make clear that all those frauds are not theft.  Both opinions instead draw a line based on the scope and timing of the consent.  Theft involves an utter lack of

---

fraud or deception is "without consent."  For that reason, we also need not decide whether theft committed through embezzlement is "without consent."  See Mena v. Lynch, No. 15-1009, 2016 WL 1660166, at *6 (4th Cir. Apr. 27, 2016) (Wilkinson, J., dissenting) (arguing that theft through embezzlement is generic theft because "the owner of the funds voluntarily entrusts them to the embezzler" and "the whole purpose of the entrustment is for an honest stewardship of the funds").  As discussed below, § 16-8-2 applies whenever a victim gives up property based on a falsehood, even without any ongoing expectation of "honest stewardship."

9

the victim's consent at the moment his property is surrendered. The thief intends to take the victim's property, and the victim either doesn't know his property is being taken or he knows but can't stop it for whatever reason. Put simply, "property has been obtained from its owner 'without consent,'" which means "a theft offense has occurred." 24 I. & N. Dec. at 439 (quoting Soliman, 419 F.3d at 282). As the BIA put it in a later opinion, "we construe the . . . words 'without consent' in their conventional sense, as denoting any involuntary or unwilling taking of property." In re Cardiel-Guerrero, 25 I. & N. Dec. 12, 20 (BIA 2009).

By contrast, fraud involves a victim who willingly consents at the time the property is surrendered, though this consent was obtained through some kind of falsehood. If the victim knew better, he wouldn't have consented. This victim "has voluntarily 'surrendered' his property, because of an 'intentional perversion of truth,' or otherwise 'act[ed] upon' a false representation to his injury." Garcia-Madruga, 24 I. & N. at 439 (quoting Soliman, 419 F.3d at 282 (alterations in original)). When the victim is tricked into handing property over in this way, the crime is fraud not theft. A crime like this is a deportable offense only if it meets the INA's distinct requirements for "a fraud offense." "The key and controlling distinction between these two crimes is therefore the 'consent' element – theft occurs without consent, while fraud occurs with consent that has been unlawfully obtained." Id.

10

B.

The second question is whether Georgia Code § 16-8-2 requires the same lack of consent as does generic theft.  Again, § 16-8-2 reads: "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."  O.C.G.A. § 16-8-2.  Mrs. Vassell argues that the phrase "regardless of the manner in which the property is taken or appropriated" establishes that the statute doesn't require any lack of consent on the part of the victim.

Georgia law is full of cases that confirm Mrs. Vassell's reading.  First, Mrs. Vassell cites Spray v. State, 476 S.E. 2d 878 (Ga. Ct. App. 1996), which said that "the phrase 'regardless of the manner in which the property is taken or appropriated' is a catch-all phrase rendering our theft by taking statute broad enough to encompass theft by conversion, theft by deception or any other of the myriad and even yet-to-be-concocted schemes for depriving people of their property."  Id. at 880 (quotation omitted).  Charlie Spray was a police officer who applied for a grant of free equipment for his police department from the Georgia Emergency Management Agency (GEMA).  GEMA approved the grant and awarded the equipment, which Officer Spray picked up from GEMA.  Id.  Instead

11

of taking the equipment to his police department or using it for anything official, Officer Spray took it home for personal use. Id.

The government tries to distinguish this case by saying Officer Spray's later "conversion of the property to personal use was without the consent of the state." That's not how the Georgia Court of Appeals analyzed the issue. That court held that Officer Spray's conviction was valid because he "deprive[d] the State of Georgia of the goods at the time [he] received the property from GEMA." Id. at 881 (emphasis added). Officer Spray's crime was deceiving GEMA. More specifically, he lied in a way that induced GEMA to give him its property. Spray confirms that § 16-8-2 is overbroad because it punishes both theft and fraud. Or as the Georgia Court of Appeals put it, the statute is "broad enough to encompass theft by conversion, theft by deception or any other of the myriad and even yet-to-be-concocted schemes for depriving people of their property." Id. at 880.

Mrs. Vassell also cites Ray v. State, 299 S.E. 2d 585 (Ga. Ct. App. 1983), which similarly held that "the clause, 'regardless of the manner in which said property is taken or appropriated[]' . . . renders the section sufficiently broad to encompass thefts or larcenies perpetrated by deception." Id. at 586 (quotation omitted). Mr. Ray was a used car salesman who filed fraudulent bank drafts. He submitted the drafts with envelopes that he said contained the documents for valid car sales, when "[i]n fact they contained therein no documents relating to the

12

automobile described on the outside and were commercially worthless." Id. at 587–88. The Georgia Court of Appeals upheld Mr. Ray's conviction because "there was evidence that the defendants intentionally created a false impression as to existing facts." Id. at 588. The court explained that this evidence alone "was sufficient to enable a trier of fact to find the defendant guilty." Id. The court even added that "the fact that the party alleged to have been defrauded did not exercise reasonable diligence in preventing the fraud affords no defense." Id. at 587 (quotation omitted). Ray confirms that § 16-8-2 punishes both theft and fraud.

The government cites a few Georgia cases of its own. First, the government points to Stull v. State, 196 S.E. 2d 7 (Ga. 1973), which said "the gravamen of [§ 16-8-2] is the taking of the property of another against the will of such other." Id. at 9. But the question here isn't about the "gravamen" of the crime. It's about the elements. Also, even if "against the will" is some kind of implied element of § 16-8-2, it is far broader than the generic "without consent" element. Even if "against the will" implies some lack of consent, a victim could just surrender property against his or her "will" based on fraud or deception. Or as the Georgia Supreme Court put it: "the language embodied in the clause, 'Regardless of the manner in which said property is taken or appropriated,' renders the section sufficiently broad to encompass thefts or larcenies perpetrated by deception." Id.

13

The facts of <u>Stull</u> show why this statutory language takes § 16-8-2 far beyond generic theft.  Henry Stull ordered merchandise and airline tickets on behalf of a fake company that he made up.  <u>Id.</u> at 102–03.  His victims delivered the merchandise and airline tickets to him.  <u>Id.</u>  The Georgia Supreme Court held that "[t]he jury was authorized to find that the accused embarked on a fraudulent scheme wherein by the use of letterheads purporting to be those of a legitimate business concern, and by the use of other deceptive practices he gained possession of the personal property which was the subject matter of the theft by taking charge."  <u>Id.</u> at 10.  The court explained that the victims

> inten[ded] . . . to extend credit, not to the accused, but to the corporation or business firm which they thought the accused represented.  They intended to sell the property to the corporation.  They delivered possession to the accused, not for himself, but as they supposed, as agent.  He was not the agent of the business firm which they were led to believe he represented, and the personnel of that firm did not know anything about him or his activities.  It is clear that the accused intended to appropriate the proceeds of the property, the possession of which he thus acquired, to his own use.

<u>Id.</u>  These victims handed over property based on the fraudulently induced belief about the defendant's identity.  Or as <u>Garcia-Madruga</u> put it, the victim "voluntarily surrendered [its] property, because of an intentional perversion of truth, or otherwise acted upon a false representation to [its] injury."  24 I. & N. Dec. at 439 (quotation omitted).  Counting the taking in <u>Stull</u> as "a theft offense" under the INA would ignore the INA's distinction between theft and fraud.

14

The government also cites two Georgia Court of Appeals cases.  First, In re E.C., 716 S.E. 2d 601 (Ga. Ct. App. 2011), involved two teenage boys accused of taking their sister's car without permission.  The sister refused to testify, so the state had no evidence that she gave no permission.  The Georgia Court of Appeals overturned the boys' convictions, saying: "That the taking was 'unlawful,' that is, without the owner's consent, is an essential element of the crime."  Id. at 602.  Next, Payne v. State, 687 S.E. 2d 851 (Ga. Ct. App. 2009), also involved a stolen car.  The defendant claimed he had permission to take the car, but the evidence showed that he violently assaulted the car owner, who screamed "take everything" and fled.  Id. at 854.  The Georgia Court of Appeals upheld the conviction.  Neither of these cases tell us what consent § 16-8-2 requires.  In E.C. there was no evidence at all of lack of consent.  In Payne there was a very stark lack of consent.  These opinions don't tell us what happens between those two extremes.  Specifically, they don't say whether a defendant can be convicted of "theft by taking" if she obtains consent by fraud or deception.  And Spray, Ray, and Stull make clear that the answer to that question is yes.

The government also points to Georgia's jury instructions, which say:

A person commits theft by taking when (a) that person unlawfully takes any property of another with the intention of depriving the other person of the property, regardless of the manner in which the property is taken or appropriated; or (b) being in lawful possession of any property of another, that person unlawfully appropriates such property

15

with the intention of depriving the other person of property, regardless of the manner in which the property is taken or appropriated.

Ga. Suggested Pattern Jury Instructions 2.64.20. These instructions never mention consent. Instead they repeat the "regardless of the manner in which the property is taken or appropriated" language that makes § 16-8-2 broader than generic theft. The government says the term "unlawfully" in these instructions means that juries must find a lack of consent. This argument is puzzling. § 16-8-2 also uses the word "unlawfully" in this exact same way, so it's unclear how the same word implies a "without consent" element in one place but not the other. And best we can tell, the government's argument hangs on equating "unlawfully" and "without consent." The word "unlawfully" means lots of things, not just "without consent." Crucially, it can refer to unlawful fraud. Also, these are jury instructions. Telling a jury that a taking must be "unlawful" hardly specifies that the taking must be without consent, especially when the instructions include the broad disclaimer "regardless of the manner in which the property is taken or appropriated."[3]

---

[3] This isn't the first time the government has argued that "unlawful" and "without consent" mean the same thing. <u>Soliman</u> rejected this same conflation:

> [T]he key distinction [between theft and fraud] is the "without consent" element . . . . This key distinction was eliminated by the definition of "theft offense" used by the BIA in this proceeding, substituting the term "unlawful" for "without consent" of the property owner. In so doing, the BIA authorized a fraud offense to satisfy the "unlawful taking" requirement of a theft, and thus be subsumed within the term "theft offense." Such a result is contrary to the intention of Congress.

419 F.3d at 283 (citation omitted). Again, this is the concern that led the BIA to add "without consent" to its definition of generic theft. The BIA ignored this concern in Mrs. Vassell's case.

16

## C.

The government makes two additional arguments for why § 16-8-2 is "a theft offense."  First, it points to this language from the Supreme Court's Duenas-Alvarez case: "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language.  It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."  549 U.S. at 184, 127 S. Ct. at 816.  The government says Mrs. Vassell "does not discuss her individual case or point to a decision in which the state court applied the statute to an action that was not an aggravated felony."  This Court rejected this same argument when we held that Georgia's "theft by shoplifting" offense is not "a theft offense" for the INA:

> [T]he Government argues that, under Duenas-Alvarez, Ramos must show that Georgia would use the Georgia statute to prosecute conduct falling outside the generic definition of theft . . . .  But Duenas-Alvarez does not require this showing when the statutory language itself, rather than 'the application of legal imagination' to that language, creates the 'realistic probability' that a state would apply the statute to conduct beyond the generic definition.  Here, the . . . statute's language [] creates the "realistic probability" that it will punish crimes that do qualify as theft offenses and crimes that do not.

Ramos v. U.S. Att'y Gen., 709 F.3d 1066, 1071–72 (11th Cir. 2013).  Here too § 16-8-2's "regardless of the manner in which the property is taken or appropriated" language "creates the 'realistic probability' that [courts] would apply

17

the statute to conduct beyond the generic definition" of theft.  Id. at 1072.  Indeed we have already explained how Mrs. Vassell has "point[ed] to . . . cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which [s]he argues."  Duenas-Alvarez, 549 U.S. at 193, 127 S. Ct. at 822.

Second, the government suggests that the "without consent" element can be satisfied at whatever moment an offender exceeds the victim's consent, even if this happens long after property is initially surrendered with consent.  The government points here to generic theft's "exercise of control over property without consent" language (as in, "taking of, or exercise of control over, property without consent").  The government made no argument about this "exercise of control" language in its appeal brief.  But it suggested at oral argument that even if a victim hands property over due to a falsehood, consent no longer exists at the moment the victim realizes that the false thing turns out not to be true.  At this point, the government's argument goes, the offender has committed "exercise of control over property without consent" and the crime becomes a generic theft.[4]

---

[4] To be clear, this is different from when an offender borrows property legitimately (as in, planning to give it back) but then later changes her mind.  Garcia-Madruga addresses this scenario in a footnote, which explains that generic theft's "exercise of control over[] property without consent" element "[p]resumably . . . capture[s] the concept of an indirect 'taking' or a situation where the owner originally relinquished the property on a consensual, nonfraudulently induced basis (e.g., where it was lent to the offender for a limited time or purpose, but the offender later determined to keep it for himself)."  24 I. & N. Dec. at 440 n.6 (emphasis added).  That's of course different from "a situation where the owner originally relinquished the property on a" fraudulently induced basis, as in Spray, Ray, and Stull.

18

But this argument just recreates the problem that Garcia-Madruga and "every Federal court of appeals to have addressed the meaning of 'theft offense,'" 24 I. & N. Dec. at 438, tried to solve: it turns all fraud into theft. All fraud could become an "exercise of control over[] property without consent" at whatever point the fraudulently obtained consent expires. For example the statute addressed in Garcia-Madruga punished "[a]ny person who by any fraudulent device obtains, or attempts to obtain, or aids or abets any person to obtain public assistance . . . to which he or she is not entitled." Id. at 437 (quotation omitted). For this statute, as for § 16-8-2, the offender's appropriation of property is criminalized even if the victim's consent expired at some later point.[5] For example, the welfare agency in Garcia-Madruga might have realized that Ms. Garcia-Madruga lied on her welfare application and asked for its disbursement back. Or the agency in Spray might have realized that Officer Spray lied on his application and asked him to give back the equipment it gave him. Or the bank in Ray might have asked Mr. Ray to return the money that the bank paid him based on his fraudulent draft document. Or the

---

[5] Indeed, every violation of the Rhode Island statute at issue in Garcia-Madruga appears to also be a violation of § 16-8-2. We know from Spray that § 16-8-2 applies to fraud of state agencies. See 476 S.E. 2d at 881. And anyone who uses a "fraudulent device . . . to obtain public assistance . . . to which he or she is not entitled," R.I. Gen. Laws § 40-6-15, no doubt also "unlawfully takes . . . property of another with the intention of depriving him of the property," O.C.G.A. § 16-8-2. But Garcia-Madruga said no violation of the Rhode Island statute is considered "a theft offense" for the INA.

19

vendor in <u>Stull</u> might have asked Mr. Stull to give back the property that it gave to him based on his lies.  Indeed this possibility would exist for any fraud victim.

But even if those victims asked for their property back, it wouldn't make a difference for whether the crime was committed.  All those defendants committed the crimes at issue when their victims handed over property because of fraud that was intended to induce this surrender.  <u>See</u> <u>Spray</u>, 476 S.E. 2d at 881 ("[T]he manner in which the theft occurred is not necessarily determinative.  Instead, the question is whether the appellant had the requisite intent to deprive the State of Georgia of the goods at the time appellant received the property."); <u>Ray</u>, 299 S.E. 2d at 588 ("[F]rom the record there was evidence that the defendants intentionally created a false impression as to existing facts.  The evidence was sufficient to enable a rational trier of fact to find the defendant guilty."); <u>Stull</u>, 196 S.E. 2d at 10 ("The jury was authorized to find that the accused embarked on a fraudulent scheme wherein by the use of letterheads purporting to be those of a legitimate business concern, and by the use of other deceptive practices he gained possession of the personal property which was the subject matter of the theft by taking charge.").  These defendants were convicted of defrauding their victims.[6]  Calling

---

[6] Beyond the cases cited by the parties, Georgia law is full of § 16-8-2 cases that show how the statute punishes fraud.  <u>See, e.g.</u>, <u>Raymond v. State</u>, 745 S.E. 2d 689, 690 (Ga. Ct. App. 2013) (defendant told victims they were "approved for a [] loan, but would have to pay a fee" and then failed to either provide a loan or return the fee); <u>Branan v. State</u>, 647 S.E. 2d 606, 608–09 (Ga. Ct. App. 2007) (defendant sold securities "for an initial payment of $3,000, with the option to sell 13 months later for $20,000" but when the victims "attempted to exercise their

these crimes "a theft offense" ignores the INA's separate requirement for fraud offenses. And the categorical approach would make every § 16-8-2 violation "a theft offense." The Georgia statute covers both theft with consent (as in, non-generic theft) and theft that lacks consent (generic theft). A violation of the statute isn't necessarily "a theft offense" as that term is used in the INA.

That said, we acknowledge that some statutes that punish non-generic theft could also give rise to a conviction for generic theft in some instances. For example, a statute may create one crime that is generic theft plus another crime that isn't. When a statute is divisible into more than one crime in this way, courts can easily identify whether a conviction was for generic theft and then apply the INA's specific requirements for a "theft offense." But the BIA didn't rule that § 16-8-2 is divisible, and the government never argued for the statute's divisibility here either. To the contrary, it seems clear that § 16-8-2 is not divisible. Though the statute uses the word "or" (as in "unlawfully takes or, being in lawful possession thereof, unlawfully appropriates"), this entire phrase is modified by the language

---

resale options after a year and demanded their money, [the defendant] failed to comply with the agreements and the victims never received returns on their investments"); Smith v. State, 565 S.E. 2d 904, 907 (Ga. Ct. App. 2002) (defendant "made withdrawals which far exceeded the amounts he knew had been deposited" in a bank account); Thogerson v. State, 479 S.E. 2d 463, 463 (Ga. Ct. App. 1996) (defendant "presented a forged cash refund voucher in the amount of $829.50 to a department store"); Matthews v. State, 446 S.E. 2d 790, 792 (Ga. Ct. App. 1994) (defendant falsely told car rental company "he was an employee of 'AT&T' and a rental was for that company" when he "did not intend to pay any rental fee").

"regardless of the manner in which the property is taken or appropriated" that makes the statute overbroad as to the consent element required for generic theft.

### III.

There is one more reason to grant Mrs. Vassell's petition.  Mrs. Vassell's is not the only case in which the BIA has decided whether a § 16-8-2 conviction is "a theft offense" for the INA.  And in every case Mrs. Vassell points us to other than her own, the BIA ruled in the way she asks us to rule here.  This includes decisions that are older than the most recent order in Mrs. Vassell's case, see In re Facio-Alba, No. A091-083-853, 2010 WL 5559167, at *3 (BIA Dec. 17, 2010) (unpublished), as well newer decisions, see In re Ajaelu, No. A058-739-058, slip op. at *1–2 (BIA Sept. 3, 2015) (unpublished).  Those orders invoke the exact reasoning Mrs. Vassell asks us to apply here.  And the government points to no BIA orders deciding the issue the other way.  The government has also confirmed that the Ajaelu order (which seems to be the BIA's most recent opinion on this issue) was the final order in that case.  The government gives no explanation for why Mrs. Vassell must be deported for her § 16-8-2 conviction but Mr. Ajaelu can't be deported for his.  Mrs. Vassell claims that lack of consistency make the BIA's order in her case arbitrary and capricious.  We need not decide this question because we agree with Mrs. Vasell that the BIA's reasoning in her case was

22

mistaken. The fact that the BIA adopted Mrs. Vassell's view in apparently every other case simply underscores this.

## IV.

We end by noting three questions that this case did not decide. First, we did not decide whether Mrs. Vassell committed "a fraud offense." The BIA's two orders in Mrs. Vassell's said nothing about "a fraud offense." We can't turn the agency's finding that Mrs. Vassell was convicted of "a theft offense" into a finding that she was convicted of "a fraud offense." See Jaggernauth v. U.S. Att'y. Gen., 432 F.3d 1346, 1356 (11th Cir. 2005) (per curiam). Second, we did not decide the meaning of "theft" for federal statutes that don't distinguish theft from fraud, as the INA does. If a statute doesn't distinguish theft from fraud in this same way, there may not be a need for a "without consent" element. The parties here agreed that generic theft contains the "without consent" element, as set out in Garcia-Madruga and Duenas-Alvarez. Third, we did not rule on Mrs. Vassell's claim about her eligibility for withholding of removal. Because we reverse the BIA's decision that Mrs. Vassell's theft crime made her removable, we need not address this other claim.

**PETITION FOR REVIEW GRANTED. THIS CASE IS REMANDED TO THE BIA FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

23