[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12743

_____

MUCKTARU KEMOKAI,

                                              Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                              Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A047-851-957

_____

Before JORDAN, NEWSOM, Circuit Judges, and GRIMBERG, District Judge.*

JORDAN, Circuit Judge:

The Board of Immigration Appeals ruled that Mucktaru Kemokai is removable as an aggravated felon and denied his requests for asylum and withholding of removal. Mr. Kemokai petitions for review, arguing that his Massachusetts conviction for armed robbery does not constitute a "theft offense" within the meaning of 8 U.S.C. § 1101(a)(43)(G), and therefore is not an "aggravated felony" under 8 U.S.C. § 1227(a)(2)(A)(iii). We reject the argument and deny the petition in that respect.

But we agree with the parties that a remand to the BIA is nevertheless required. The Attorney General has issued an intervening decision which might impact Mr. Kemokai's request for withholding of removal, and the BIA should have the opportunity to consider the effect of that decision. We therefore grant the petition in part.

## I

Mr. Kemokai, a native and citizen of Sierra Leone, was admitted to the United States as a lawful permanent resident in 2001. In 2018, he pled guilty to armed robbery in violation of Mass. Gen. Laws ch. 265, § 17, and was sentenced to two years of supervised

---

* The Honorable Steven D. Grimberg, U.S. District Judge for the Northern District of Georgia, sitting by designation.

release.  But he violated the terms of his release, and the state court sentenced him to a prison term of one to one-and-a-half years.

The Department of Homeland Security then initiated removal proceedings.  As relevant here, the notice to appear charged Mr. Kemokai with removability as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii) on the ground that he had committed a theft offense within the meaning of 8 U.S.C. § 1101(a)(43)(G).[1]

After retaining counsel, Mr. Kemokai moved to terminate the removal proceedings, arguing in part that his armed robbery conviction did not constitute a theft offense because the relevant Massachusetts statute was broader than the generic definition of theft.  In his view, generic theft requires a taking of property without the victim's consent, but armed robbery under Massachusetts law does not.  This, according to Mr. Kemokai, was because larceny in Massachusetts is an element of robbery (and thus, armed robbery) and encompasses both consensual and nonconsensual takings.

The immigration judge disagreed, reasoning that robbery requires the use of force or that the victim be put in fear.  This additional element renders any taking under Massachusetts' armed robbery statute nonconsensual.  Because the armed robbery statute

---

[1] A noncitizen "who is convicted of an aggravated felony at any time after admission is deportable."  § 1227(a)(2)(A)(iii).  A "theft offense . . . for which the term of imprisonment [is] at least one year" is an "aggravated felony." § 1101(a)(43)(G).

categorically matches the generic definition of a theft offense, the immigration judge sustained the aggravated felony charge.

Mr. Kemokai appealed to the BIA. The BIA dismissed the appeal, concluding that Massachusetts' armed robbery statute is not broader than generic theft.

## II

The INA limits our jurisdiction over final orders of removal to constitutional claims or questions of law. *See* 8 U.S.C. § 1252(a)(2)(D); *Patel v. U.S. Att'y. Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) (en banc). Whether Mr. Kemokai's armed robbery conviction constitutes an aggravated felony is a question of law, so we have jurisdiction. *See Cintron v. U.S. Att'y Gen.*, 882 F.3d 1380, 1383 (11th Cir. 2018).

The government argues, however, that we lack jurisdiction because Mr. Kemokai failed to exhaust his challenge before the BIA. Under 8 U.S.C. § 1252(d)(1), "[a] court may review a final order of removal only if" the noncitizen "has exhausted all administrative remedies available to [him] as of right." Our cases have interpreted this provision as a jurisdictional bar on review of removal challenges not raised before the BIA. *See, e.g., Sundar v. I.N.S.*, 328 F.3d 1320, 1323 (11th Cir. 2003) (holding that, because of § 1251(d)(1), "we lack jurisdiction to consider claims that have not been raised before the BIA"). But the Supreme Court recently held, in *Santos-Zacaria v. Garland*, 598 U.S. 411, 413, 419 (2023), that § 1252(d)(1) is not jurisdictional. *Santos-Zacaria* therefore abrogates our prior precedent to the contrary.

21-12743                Opinion of the Court                      5

Nevertheless, § 1252(d)(1) remains a "claim-processing rule." *Id.* at 417. And such a rule is generally applied where, as here, it has been asserted by a party. *See Fort Bend Cnty., Texas v. Davis*, 139 S. Ct. 1843, 1849 (2019); *United States v. Harris*, 989 F.3d 908, 910–11 (11th Cir. 2021).

We are satisfied that Mr. Kemokai exhausted his challenge to removability before the BIA. At bottom, he presents the same core argument here that he raised before the immigration judge and the BIA—that his conviction does not constitute an aggravated felony because Massachusetts' armed robbery statute is broader than generic theft. *See Indrawati v. U.S. Atty. Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (explaining that exhaustion "is not a stringent requirement" and is satisfied if the petitioner "previously argued the 'core issue now on appeal' before the BIA") (citation omitted). We therefore move on to the merits.

### III

Whether Mr. Kemokai's armed robbery conviction constitutes an aggravated felony presents a question of law subject to plenary review. *See Cintron*, 882 F.3d at 1383; *Accardo v. U.S. Atty. Gen.*, 634 F.3d 1333, 1335–36 (11th Cir. 2011). As noted earlier, a noncitizen is removable if he "is convicted of an aggravated felony at any time after admission," 8 U.S.C. § 1227(a)(2)(A)(iii), and under 8 U.S.C. § 1101(a)(43)(G) the term "aggravated felony" includes "a theft offense . . . for which the term of imprisonment [is] at least one year."

Because the Immigration and Nationality Act does not define the term "theft offense," we look to the "generic definition of theft." *Vassell v. U.S. Atty. Gen.*, 839 F.3d 1352, 1356 (11th Cir. 2016). Generic theft, as defined by the BIA and by us, means "the taking of, or exercise of control over, property without consent whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." *Id.* (quoting *In re Garcia–Madruga*, 24 I. & N. Dec. 436, 440–41 (BIA 2008)).

To determine if a state conviction falls within the generic federal definition of a corresponding aggravated felony we generally employ a "categorical approach." *See Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1280 (11th Cir. 2013). We look only to the relevant statute of conviction, as construed by the state courts, and ask whether it "categorically fits" within the generic definition of the federal offense. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). In other words, we "compare[ ] the generic offense to the minimum conduct criminalized by the . . . statute [of conviction]." *Vassell*, 839 F.3d at 1356 (citation and internal quotation marks omitted). *See also Mathis v. United States*, 579 U.S. 500, 505 (2016) ("The court . . . lines up th[e] crime's elements alongside those of the generic offense and sees if they match."). A statute of conviction constitutes a categorical match only if "the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013).

## A

Mr. Kemokai was convicted of armed robbery in violation of Mass. Gen. Laws ch. 265, § 17.  In relevant part, § 17 provides that "[w]hoever, being armed with a dangerous weapon, assaults another and robs, steals or takes from his person money or other property which may be the subject of larceny shall be punished by imprisonment[.]"[2]

The offense of armed robbery under § 17 entails a number of elements.  The prosecution must prove that "(1) the defendant was armed with a dangerous weapon (though it need not be used); (2) the defendant either applied actual force or violence to the body of the person identified in the indictment, or by words or gestures put him in fear (i.e., the defendant committed an assault on that person); and (3) the defendant took the money or . . . the property of another with intent to steal it."  *United States v. Luna*, 649 F.3d 91, 108 (1st Cir. 2011) (citing *Commonwealth v. Rogers,* 945 N.E.2d 295, 300 n.4 (Mass. 2011)) (internal quotation marks omitted).[3]

---

[2] The type of "property which may be the subject of larceny" is spelled out in the general larceny statute.  *See* Mass. Gen. Laws ch. 266, § 30(2) (defining "[t]he term 'property' as used in the [larceny statute]").  *See also* 14A Mass. Prac., Summary of Basic Law § 7:215 (5th ed. 2022) ("The statute defining the crime of robbery refers to 'money or other property which may be the subject of larceny' as that which may be the subject of a robbery.").

[3] In analyzing § 17, we are bound by the construction given to it by the Massachusetts courts.  *See, e.g., Johnson v. United States*, 559 U.S. 133, 138 (2010) (indicating that, in determining whether a Florida offense constituted a "violent felony" under the Armed Career Criminal Act, federal courts were "bound by" the state courts' construction of a state criminal statute); *Murdock*

These elements, under the categorical approach, match the generic definition of theft. Generic theft requires taking the property of another without consent and with intent to steal. *See Vassell*, 839 F.3d at 1356. The third element of armed robbery under § 17—the taking of property with the intent to steal—matches two of the requirements of a generic theft offense—i.e., the taking of property with the criminal intent to deprive the victim of the rights and benefits of ownership. And the second element of armed robbery under § 17—the taking of property by the use of force or by putting the victim in fear—matches the generic theft requirement that the taking be without the consent of the victim. Massachusetts law teaches that "[t]he essence of robbery is the exertion of force, actual or constructive, against another in order to take personal property . . . which is so within his reach . . . that he could, if not overcome

---

*v. City of Memphis*, 87 U.S. 590, 609 (1874) (observing that "a fixed and received construction of the statutes of a State in its own courts" is "a part of the statutes") (internal quotation marks omitted); *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1282 n.4 (11th Cir. 2013) (noting that, in determining whether a Florida conviction constituted an aggravated felony, "we are bound by Florida Supreme Court's interpretation of state law" and "defer to its interpretation of the allocation of the burden [of proof] under the [state's] statutory scheme") (internal quotations omitted); *United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012) ("[I]n determining whether a [state] conviction . . . is a 'crime of violence' for sentencing enhancement purposes, we are bound by [the state] courts' determination and construction of the substantive elements of that state offense.").

21-12743            Opinion of the Court            9

by violence or prevented by fear, retain his possession of it." *Commonwealth v. Novicki*, 87 N.E.2d 1, 3 (Mass. 1949). This understanding satisfies the "without consent" requirement of generic theft, and we find persuasive the BIA's decision in *Matter of Ibarra*, 26 I. & N. Dec. 809, 811 (BIA 2016), on this point: "There is no meaningful difference between a taking of property accomplished against the victim's will and one where his 'consent' to parting with his property is coerced through force, fear, or threats."

We recognize, of course, that § 17 has an additional element—being armed with a dangerous weapon—but this makes the offense of armed robbery narrower, not broader, than generic theft. In other words, § 17 does not cover "any more conduct" than generic theft. *See Mathis*, 579 U.S. at 504. *Cf. United States v. Turner*, 741 F.App'x 687, 691 (11th Cir. 2018) ("Although Turner is correct that [the statute of conviction] imposes additional elements—that the defendant must have caused injury or been armed with, or threatened the use of a weapon—these additional elements . . . do not broaden the statute, but rather narrow it."); *United States v. Pacheco*, 709 F. App'x 556, 562 (11th Cir. 2017) ("To the extent the Michigan home invasion statutes add[ ] additional requirements—e.g., that the defendant be armed or that another person be present—their elements are simply narrower than those of generic burglary and still qualify.").[4]

---

[4] *Turner* and *Pacheco* are unpublished opinions, but we find them persuasive for the point cited.

This does not, however, end our analysis.  As discussed below, Mr. Kemokai argues that a different aspect of Massachusetts law makes armed robbery broader than generic theft.

## B

The Massachusetts larceny statute provides in relevant part that "[w]hoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section . . . shall be guilty of larceny." Mass. Gen. Laws ch. 266, § 30(1).  The statute merges, into one statutory crime, the three distinct common-law offenses of larceny by theft (or by stealing), larceny by embezzlement, and larceny by false pretense.  *See Commonwealth v. Mills*, 764 N.E.2d 854, 860 (Mass. 2002).[5]

---

[5] Notwithstanding the statutory merger in § 30(1), the three variations of larceny remain distinct offenses with different elements. *See Mills*, 764 N.E.2d at 865.  Larceny by theft requires an "unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently." *Id.* at 861.  Larceny by embezzlement requires proof that "the defendant fraudulently converted to his personal use property that was under his control by virtue of a position of trust or confidence and did so with the intent to deprive the owner of the property permanently." *Id.* at 861–62 (internal quotation marks omitted).  And "larceny by false pretenses requires proof that (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property." *Id.* at 863.

Because larceny can encompass a victim turning over his or her property voluntarily due to a misrepresentation—i.e., through fraud—and because Massachusetts courts have held that "[r]obbery includes all the elements of larceny," *Commonwealth v. Johnson*, 396 N.E.2d 974, 977 (Mass. 1979), Mr. Kemokai contends that the armed robbery statute, § 17, is broader than generic theft. *See* Petitioner's Br. at 14–15. He relies on several cases holding that fraud is not within the definition of generic theft. *See Vassell*, 839 F.3d at 1359 (explaining that the "without consent" element differentiates theft from fraud: "The key and controlling distinction between these two crimes is . . . the 'consent' element—theft occurs without consent, while fraud occurs with consent that has been unlawfully obtained.") (internal quotation marks and citation omitted); *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1148 (9th Cir. 2020) ("We have explained elsewhere that theft statutes which include theft by deception fall outside the generic definition for theft.").

We are not persuaded. The language from *Johnson* cited by Mr. Kemokai cannot be read in a vacuum to mean that larceny, in all of its common-law forms, constitutes an element of robbery. Although *Johnson* does say that "[r]obbery includes all the elements of larceny," 396 N.E.2d at 977, the Supreme Judicial Court of Massachusetts has made clear that the larceny referenced in this passage is larceny by theft (i.e., by stealing) and not larceny by fraud (i.e., by false pretense): "[I]n order to sustain a charge of robbery, there must be proof of a larceny (1) 'from . . . (the) person' and (2)

'by force and violence, or by assault and putting in fear.'" *Common-wealth v. Jones*, 283 N.E.2d 840, 843 (Mass. 1972) (quoting Mass. Gen. Laws ch. 277, § 39 (defining the offense of robbery)). *See also id.* at 843 n.2 ("Larceny as an element of robbery means '(t)he taking and carrying away of (the) personal property of another . . . against his will . . . with intent to steal.'") (quoting § 39); *Common-wealth v. Goldstein*, 768 N.E.2d 595, 598 (Mass. Ct. App. 2002) ("Robbery includes all of the elements of larceny and in addition requires that force and violence be used against the victim or that the victim be put in fear."); *Commonwealth v. Olivera*, 719 N.E.2d 515, 517 (Mass. Ct. App. 1999) ("Remove the weapon [in an armed robbery case] and the offense may be robbery, i.e., taking the property of another through the application of violence or intimidation. . . Remove violence or intimidation, and the offense becomes larceny."); *Dudley v. Ryan*, 62 F. Supp. 3d 193, 197–98 (D. Mass. 2014) ("In Massachusetts, the unarmed robbery statute draws substantially from the common law of robbery and requires a showing of larceny from a person by force and violence or by assault and putting in fear.").

## IV

Mr. Kemokai also seeks review of the BIA's denial of his requests for withholding of removal and asylum. We discuss each form of relief below.

A noncitizen is ineligible for asylum if "the Attorney General determines" that he, "having been convicted by final judgment of

a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1158(b)(2)(A)(ii). For purposes of asylum, a noncitizen "who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly serious crime." § 1158(b)(2)(B)(i). Mr. Kemokai was convicted of an aggravated felony, and as a result he is considered to have been convicted of a particularly serious crime. And under our precedent, his conviction for a particularly serious crime necessarily makes him a danger to the community. *See K.Y. v. U.S. Atty. Gen.*, 43 F.4th 1175, 1185 (11th Cir. 2020); *Lapaix v. U.S. Atty. Gen.*, 605 F.3d 1138, 1141 n.2 (11th Cir. 2010); *Crespo-Gomez v. Richard*, 780 F.2d 932, 934 (11th Cir. 1986). We therefore deny the asylum claim.

Withholding of removal is a somewhat different story. Similar to asylum, a noncitizen is ineligible for withholding of removal if "the Attorney General decides" that he, "having been convicted by a final judgment of a particularly serious crime is a danger to the community." 8 U.S.C. § 1231(b)(3)(B)(ii). For purposes of withholding of removal, however, a conviction for an aggravated felony per se constitutes a particularly serious crime only if the noncitizen "has been sentenced to an aggregate term of imprisonment of at least [five] years." § 1231(b)(3)(B)(iv). If the sentence for an aggravated felony is less than five years, the Attorney General can still determine that the conviction was for a particularly serious crime. *See id. See also Lapaix*, 605 F.3d at 1143 ("When the offense in question is not a per se particularly serious crime, the Attorney General retains discretion to determine on a case-by-case basis whether the

offense constituted a particularly serious crime.").

Mr. Kemokai was sentenced to less than five years in prison. His aggravated felony conviction, therefore, does not per se constitute a particularly serious crime with respect to withholding of removal.

The parties agree that we should remand to the BIA to reconsider Mr. Kemokai's request for withholding of removal. In an intervening decision, the Attorney General has concluded that mental health evidence can be considered in determining whether an offense constitutes a particularly serious crime making the noncitizen a danger. *See Matter of B-Z-R-*, 28 I. & N. Dec. 563, 567 (A.G. 2022). Because Mr. Kemokai presented evidence of mental health problems, and this evidence was not considered by either the immigration judge or the BIA, we remand for reconsideration in light of *Matter of B-Z-R-*.

## V

Mr. Kemokai's petition is denied in part and granted in part, and the matter is remanded to the BIA for further proceedings consistent with our opinion.

**PETITION DENIED IN PART, GRANTED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS.**