[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16713
Non-Argument Calendar

_____

D.C. Docket No. 7:15-cr-00021-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MISAEL ROSARIO PACHECO, SR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(September 19, 2017)

Before MARCUS, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Misael Rosario Pacheco, Sr. appeals his conviction and sentence of 300 months' imprisonment, imposed after pleading guilty to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) and

§ 924(e)(1).   On appeal, Pacheco argues that: (1) the district court abused its discretion in denying his motion to exclude Rule 404(b) evidence and allowing the government to introduce evidence of his prior convictions, causing him substantial prejudice; and (2) the district court improperly sentenced him under the Armed Career Criminal Act ("ACCA") when it qualified certain prior convictions as ACCA predicate offenses.   After thorough review, we affirm.

The relevant facts, as adduced at trial, are these.   On April 5, 2015, the Lowndes County Sheriff's Office SWAT/SRT unit responded to a report of family violence, and sought to apprehend a subject, identified as Pacheco, who was barricaded inside a residence and possibly armed.   After seeking but receiving no response from Pacheco for fifteen minutes, the SWAT/SRT unit pushed open the front door.   Pacheco then exited the residence and was taken into custody.   He did not have any firearms on his person.

After Pacheco was taken into custody, the Lanier County Sheriff's Office searched the house.   In a bedroom, Detective John Olsen located a gray and black backpack inside a closet, containing clothing, cigarettes, a knife, a pair of gloves, and a .454 caliber Ruger handgun.   In the vegetable crisper of the kitchen refrigerator, Detective Olsen found a Taurus firearm.  Detective Olsen testified that in the backyard, many personal items, like clothes, jewelry and food items, had

been discarded out into the backyard into a trash pile along the woodline, which appeared to have been burned.

Mariah Enix, Pacheco's eighteen year-old stepdaughter, testified that a couple weeks before April 5, 2015, Pacheco had shot at the family dog. She identified the Taurus firearm as the one Pacheco had used. On cross-examination, defense counsel questioned Enix about a statement she had made after the April 5th incident -- that "I'd rather him to be dead, to be honest." On redirect, Enix explained that Pacheco had previously put a gun to her head and threatened her, which caused her to be removed from the home by Child Protective Services.

Lucera Chauvez, Pacheco's twelve year-old stepdaughter, testified that on April 4, 2015, she had gone with Pacheco to hunt with a handgun behind their home. Upon returning home, Pacheco found that his Kindle was not charged and became angry. Pacheco began yelling and made Chauvez, her mom, and her three brothers take clothing, food, and other household items outside to the trash pile in the backyard. Back in the house, Chauvez observed Pacheco go to her oldest brother's room, point a gun at her brother, and then shoot into the floor. Chauvez identified a photograph of the bullet hole in the floor, as well as the Taurus firearm that Pacheco had used in her brother's room. Chauvez also said she saw Pacheco place a handgun in a backpack. Chauvez added that afterwards, Pacheco, her mother, and her brother were in the backyard, and Pacheco shot into the woods.

3

On cross-examination, defense counsel questioned Chauvez about the Taurus firearm Pacheco used to shoot into the floor. The defense raised an inconsistency in Chauvez's testimony, confirming that she saw Pacheco put the Taurus into the backpack, rather than the Ruger that was ultimately found in the backpack by law enforcement.

At the conclusion of its case-in-chief, the government called Aleta Demeester, a parole and probation officer for the State of Michigan. Demeester identified a certified copy of Pacheco's prior convictions for assault with intent to rob and steal while armed, home invasion first degree, and felony firearm.

The jury ultimately found Pacheco guilty of possession of a firearm by a convicted felon. At sentencing, the district court determined that Pacheco was an armed career criminal under 18 U.S.C. § 924(e), and sentenced him to 300 months' imprisonment, followed by five years' supervised releases. This appeal follows.

We review a district court's decision to admit evidence under Rule 404(b) for clear abuse of discretion. United States v. Sterling, 738 F.3d 228, 234 (11th Cir. 2013). While we review the reasonableness of a sentence under a deferential abuse-of-discretion standard, Gall v. United States, 552 U.S. 38, 41 (2007), we review de novo a district court's determination that a particular conviction is a "violent felony" within the meaning of the ACCA, United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).

4

First, we are unpersuaded by Pacheco's claim that the district court abused its discretion by allowing the government to introduce evidence of his prior convictions. The Federal Rules of Evidence provide that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, this evidence may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Id. 404(b)(2).

In deciding whether other bad acts are admissible under Rule 404(b), we use a three-part test. United States v. Matthews, 431 F.3d 1296, 1310 (11th Cir. 2005).

> First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

Id. at 1310–11 (11th Cir. 2005) (quotation omitted).

We've said that "the caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental)." United States v. Jernigan, 341 F.3d 1273, 1281 (11th Cir. 2003). As

for the second factor, "[i]t is elementary that a conviction is sufficient proof that [the defendant] committed the prior act." Id. at 1282 (quotation omitted).

Like other relevant evidence, Rule 404(b) evidence "should not be lightly excluded when it is central to the prosecution's case." United States v. Perez-Tosta, 36 F.3d 1552, 1562 (11th Cir. 1994). Nevertheless, if the government can do without the evidence, "fairness dictates that it should." Sterling, 738 F.3d at 238. "A prior crime need not be factually identical in order for it to be probative," and neither must it be very recent. Id. To assess whether evidence is more probative than prejudicial, a district court must use a "common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Jernigan, 341 F.3d at 1282 (quotation omitted).

When a defendant is charged with possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e), the offense "entails three distinct elements: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce." Jernigan, 341 F.3d at 1279. Concerning possession -- the only element Pacheco disputes -- the government need not prove actual possession in order to fulfill the "knowing" requirement of § 922(g)(1). Rather, it may be shown through constructive possession. See United States v. Sweeting, 933 F.2d

6

962, 965 (11th Cir. 1991). A firearm need not be on or near the defendant's person in order to amount to knowing possession. See United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004).

Here, the district court did not abuse its discretion in admitting evidence of Pacheco's prior convictions for assault with intent to rob while armed, home invasion, and felony firearm. At trial, Pacheco argued that he did not know that the two firearms he was convicted of possessing -- a Taurus and a Ruger -- were in the house where he was arrested. In making this argument, he placed his knowledge of the existence of the firearms at issue, thereby triggering the Rule 404(b) test. Pacheco does not challenge either of the first two prongs of the test. But even if he did, it is clear that introduction of evidence of his prior convictions involving a firearm was relevant to show that Pacheco had knowledge of the firearms in the home in the instant case. See Jernigan, 341 F.3d at 1281 (concluding that the defendant's prior knowing commission of crimes that involved the possession of a weapon logically bore on his knowledge of the presence of the gun in the instant case). It was also relevant to show Pacheco's intent to knowingly possess the firearms. See Fed. R. Evid. 404(b)(2). The government also clearly satisfied the second factor by proving the prior bad acts by convictions. See Jernigan, 341 F.3d at 1282.

As for the third factor, the record indicates that there was prosecutorial need for the introduction of the prior convictions. The government's case relied on one eyewitness who testified to seeing Pacheco put one of the guns in the backpack in which it was found, and a second witness who saw him in possession of a firearm at another time. However, the defense raised an inconsistency in the testimony of the first witness, Pacheco's twelve-year-old stepdaughter -- she said she saw Pacheco put the Taurus in the backpack, although law enforcement later found the Ruger in the backpack. As for the other witness, Pacheco's eighteen-year-old stepdaughter, the defense also challenged her perception of his possession of the firearm, and elicited her dislike for Pacheco, whom she had admitted she would "rather . . . be dead." In light of the defense's challenges to these witnesses' testimony, we recognize that Pacheco's prior convictions may have been important to the prosecution's case. Moreover, the prior convictions were probative because, like the instant offense, they all involved Pacheco's possession and illegal use of a firearm. And while the offenses underlying the 1999 convictions were more than 15 years old at the time of trial, we've held that the prior bad acts need not be recent. See Sterling, 738 F.3d at 238; see also United States v. Lampley, 68 F.3d 1296, 1300 (11th Cir. 1995) (affirming admission of prior acts from fifteen years prior); United States v. Pollock, 926 F.2d 1044, 1048 (11th Cir. 1991) (noting that courts have upheld the admission of Rule 404(b) evidence that "occurred ten and

8

thirteen years earlier than the charged offense"). Thus, a consideration of all the factors supports the finding that the evidence was more probative than prejudicial, and the district court did not err in admitting the Rule 404(b) evidence at trial.

We also are unconvinced by Pacheco's claim that the district court improperly sentenced him as an armed career criminal under the ACCA based on his prior convictions for first-degree home invasion and assault with intent to do great bodily harm less than murder. The ACCA provides for a mandatory minimum sentence of 15 years' imprisonment for a defendant convicted of possessing a firearm as a felon in violation of 18 U.S.C. § 922(g), where the defendant's felony record includes, inter alia, three prior convictions for a "violent felony." 18 U.S.C. § 924(e). The ACCA defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012).

9

In June 2015, the Supreme Court held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. Johnson v. United States, 135 S. Ct. 2551, 2557-58, 2563 (2015). The Supreme Court clarified that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. Id. at 2563. A crime qualifies as an enumerated offense under the ACCA "if its elements are the same as, or narrower than, those of the generic offense." Mathis v. United States, 136 S. Ct. 2243, 2248 (2016). However, if the crime of conviction covers any more conduct than the generic offense, then it is not an ACCA enumerated offense -- "even if the defendant's actual conduct (i.e., the facts of the crime) fits within the generic offense's boundaries." Id. As for the elements clause, the Supreme Court had defined "physical force" under the elements clause as "violent force -- that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010).

For starters, it is clear that Pacheco's two first-degree home invasion convictions still qualify as violent felonies after Johnson under the enumerated clause. "To determine whether a prior conviction is for generic burglary . . . courts apply what is known as the categorical approach: They focus solely on whether the

elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case." Mathis, 136 S. Ct. at 2248. The generic offense of burglary requires "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 598 (1990).

At the time Pacheco committed both home invasions, November 1998 and September 1999, Michigan law provided that:

> A person who breaks and enters a dwelling with intent to commit a felony or larceny in the dwelling or a person who enters a dwelling without permission with intent to commit a felony or larceny in the dwelling is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2) (1994). The current version of the statute, effective October 1, 1999, adds as an alternative to entering with the intent to commit a crime, "at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault." Mich. Comp. Laws 750.110a(2).

The Sixth Circuit has recently held that the current version of Michigan's home-invasion statute qualifies as a "violent felony" under the ACCA's enumerated crimes clause because it is "categorically equivalent to generic

11

burglary." United States v. Quarles, 850 F.3d 836, 839 (6th Cir. 2017);[1] see also United States v. Garcia-Serrano, 107 F. App'x 495, 496 (6th Cir. 2004) (unpublished) (holding that a conviction for first-degree home invasion qualifies as crime of violence under the Sentencing Guidelines).[2] In Quarles, the Sixth Circuit held, among other things, that the statute's use of the term "dwelling" does not encompass more areas than the "building or structures" component of generic burglary, as defined by the Supreme Court defined in Taylor v. United States, 495 U.S. 575, 598 (1990). The Sixth Circuit pointed out that Michigan's statute is narrow, and that the Michigan legislature knew how to "expressly incorporate[]" a broader range of places when it intended to, as it did in its breaking-and-entering statute. Quarles, 850 F.3d at 839-40 (citing Michigan Compiled Laws § 750.110(1)).

We agree with the Sixth Circuit and hold that Pacheco's two convictions for home invasion qualify as violent felonies under the ACCA's enumerated clause

---

[1] Although Quarles involved third-degree home invasion, as opposed to first-degree home invasion, both offenses are indistinguishable for ACCA purposes. See Mich. Comp. Laws § 750.110a(4) (defining third-degree home invasion as when a person "[b]reaks and enters a dwelling with intent to commit a misdemeanor in the dwelling, enters a dwelling without permission with intent to commit a misdemeanor in the dwelling, or breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a misdemeanor."). Third-degree home invasion simply replaces "felony or larceny" with "misdemeanor," removes the additional circumstances concerning whether a firearm or other person are present, while relying on the same definition of "dwelling" as first-degree home invasion. Id. § 750.110a(1), (2), (4).

[2] See United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008) (reiterating that the definition of a "violent felony" under the ACCA is "virtually identical" to the definition of a "crime of violence" under the Sentencing Guidelines).

12

because they are sufficiently similar to the generic form of burglary.  Both the pre-amended Michigan home invasion statute and the amended version require the same essential elements as the generic form of burglary:  (1) an unlawful entry: (2) into a building or structure (3) with the intent to commit a crime.  See, e.g., Quarles, 850 F.3d at 839; Garcia-Serrano, 107 F. App'x at 496 ("Michigan's definition of home invasion-first degree includes all of the elements of burglary of a dwelling.").  To the extent the Michigan home invasion statutes adds additional requirements -- e.g., that the defendant be armed or that another person be present -- their elements are simply narrower than those of the generic offense of burglary and still qualify.  See Mathis, 136 S. Ct. at 2248.  Thus, his 1999 and 2001 home invasion convictions remain violent felonies under the enumerated clause.

As for whether Pacheco's conviction for assault with intent to do great bodily harm less than murder qualifies as a violent felony after Johnson, it still qualifies as one under the elements clause.  Michigan's offense of assault with intent to do great bodily harm less than murder provides that a person who commits the offense is guilty of a felony punishable by imprisonment for no more than 10 years or a fine of not more than $5,000 or both.  See Mich. Comp. Laws § 750.84.  The Michigan Court of Appeals has delineated the elements of assault with intent to do great bodily harm less than murder as: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent

13

to do great bodily harm less than murder." People v. Parcha, 227 Mich. App. 236, 239 (1997). Assault with intent to do great bodily harm is a specific intent crime. Id. Michigan courts have defined the intent to do great bodily harm as "an intent to do serious injury of an aggravated nature." People v. Brown, 267 Mich. App. 141, 147 (2005) (quotation omitted).

Here, the Michigan offense of assault with intent to do great bodily harm less than murder has as an element the attempted or threatened used of force or violence -- specifically, it requires an attempt or threat with force or violence to assault another with the intent to do great bodily harm less than murder, which is defined as "serious injury of an aggravated nature." See id.; Parcha, 227 Mich. App. at 239. Plainly, these elements constitute "physical force" as defined by the Supreme Court. See Johnson, 559 U.S. at 140 (defining "physical force" as force "capable of causing physical pain or injury to another person"). Thus, the Michigan statute qualifies as violent felony under the ACCA's elements clause.

In short, Pacheco has three qualifying violent felony convictions: (1) a 1999 home invasion conviction; (2) a 2001 home invasion conviction; and (3) a 2012 assault with intent to do great bodily harm conviction. On this record, the district court did not err in sentencing Pacheco as an armed career criminal, and we affirm.

**AFFIRMED**.