[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-11754

Non-Argument Calendar

————————————————

SAUL OTONIEL GASPAR-GASPAR,
EDGAR GASPER-JUAN,

Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A208-893-010

_____

Before JILL PRYOR, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Saul Gaspar-Gaspar and his minor child, Edgar Gaspar-Juan, petition for review of a decision from the Board of Immigration Appeals affirming an immigration judge's denial of Gaspar-Gaspar's application for asylum and withholding of removal. In the petition, Gaspar-Gaspar and his son argue that substantial evidence does not support the Board's denial of the asylum claim and that the Board used the wrong standard to evaluate the withholding-of-removal claim. After careful review, we deny the petition.

**I.**

Gaspar-Gaspar and Edgar are citizens of Guatemala who entered the United States in 2016. After entering the country, Gaspar-Gaspar and his son were charged with being removable as noncitizens present in the United States without having been admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). In immigration proceedings, they conceded removability.

Gaspar-Gaspar applied for asylum and withholding of removal. Edgar was a derivative beneficiary of his father's asylum application. *See id*. § 1158(b)(3)(A) (providing that a child of an applicant "who is granted asylum . . . may . . . be granted the same status as the [parent]").

In his application, Gaspar-Gaspar alleged that he suffered past persecution and had a well-founded fear of future persecution

in Guatemala on account of his race, as an indigenous Mayan, and his membership in a particular social group. Gaspar-Gaspar asserted that he was a member of the following social groups: (1) Guatemalan young men who were subjected to recruitment efforts by the Mara-18 gang but rejected or resisted gang membership because of their opposition to the gang's values and activities, (2) indigenous Guatemalan Mayans who were targets of discrimination and aggression from gang members, (3) young Guatemalans who were actively recruited by gangs but refused to join, and (4) indigenous men from Guatemala who were beaten and threatened with death for being a minority and refusing to join the Mara-18 gang.

The immigration judge held a hearing on Gaspar-Gaspar's application. Gaspar-Gaspar testified at the hearing. He told the immigration judge that before he left Guatemala, the Mara-18 gang had threatened and harmed him because of his Mayan race. He was afraid that if he returned to Guatemala the gang would kill him or his family.

Gaspar-Gaspar described how gang members targeted and harassed members of the indigenous community where he grew up. According to Gaspar-Gaspar, gang members would come to his village every few weeks to "extort people" and sometimes "would burn people." AR at 134.[1] Beginning in April 2010, when Gaspar-Gaspar was 16 years old, gang members sought him out when they

---

[1] "AR" refers to the administrative record.

visited the village. On at least three occasions over the next two years, gang members threatened to kill Gaspar-Gaspar or his family if he did not join the gang. On the last occasion when gang members visited Gaspar-Gaspar in the village, they demanded that he pay them 60,000 quetzals.

In 2012, fearing for his safety, Gaspar-Gaspar fled from his village to Guatemala City. Approximately 20 days later, gang members tracked him down in Guatemala City and attacked him. They pinned him against a wall and stabbed him in the leg with a knife. Although he was in severe pain and barely able to walk, he did not go to a hospital because he could not afford to pay for medical care. Instead, he wrapped his leg and let the wound heal on its own.

Over the next few years, gang members threatened Gaspar-Gaspar several more times. During one confrontation, armed gang members struck him in the head with a pistol. Eventually he and his son, Edgar, fled Guatemala and came to the United States.

At his immigration hearing, Gaspar-Gaspar was asked why the Mara-18 gang had targeted him. He answered that it was because he was a young man and they wanted him to join the gang. He also said that it was because he was an "indigenous Mayan" and they wanted him "to join them." *Id.* at 131.

The record before the immigration judge primarily consisted of Gaspar-Gaspar's testimony. The immigration judge also considered the Department of State country reports for Guatemala. These reports noted that the "[s]ignificant human rights issues in Guatemala" included "crimes involving violence or threats

of violence targeting . . . members of indigenous groups." *Id.* at 24–25. The immigration judge also found that there was a "very high level of criminality" in Guatemala. *Id.* at 88.

At the conclusion of the hearing, the immigration judge denied Gaspar-Gaspar's application for asylum and withholding of removal. To be entitled to asylum, the immigration judge stated, Gaspar-Gaspar had to show that he either had suffered past persecution or had a well-founded fear of future persecution. She explained that he also had to establish a nexus by proving that a protected ground, such as race or membership in a particular social group, was "one central reason" for the past persecution he experienced or future persecution he feared. *Id.* at 87.

The immigration judge concluded that Gaspar-Gaspar was not entitled to asylum. She considered his claim that he was entitled to asylum based on his membership in a particular social group. She concluded that none of Gaspar-Gaspar's proposed groups qualified as a particular social group, stating, "[r]esistance to gang recruitment is not a particular social group as defined by case law," and "victims of gang violence are not considered to be members of a particular social group pursuant to case law." *Id.* at 88.

The immigration judge also addressed whether Gaspar-Gaspar was entitled to asylum based on his allegation that he had been or would be persecuted because of his race. Because there was no evidence "that the gangs targeted him because he was Mayan," she concluded that he failed to establish that his "Mayan ethnicity was

the basis for the threats and the harm he received from the gangs." *Id.* at 89. Thus, Gaspar-Gaspar failed to establish that "his race was central to" the past persecution he suffered or the future persecution he feared. *Id.*

The immigration judge also rejected Gaspar-Gaspar's application for withholding of removal. She explained that to be entitled to withholding of removal, he had to show that his "life or freedom" would be threatened in Guatemala "on account of" a protected ground such as race or membership in a particular social group. *Id.* at 87. The immigration judge explained that Gaspar-Gaspar had to establish "a clear probability of persecution" based on a protected ground. *Id.* She concluded that because he had "not met the lower burden" for his asylum claim, he also had "not met the higher burden under withholding of removal." *Id.* at 89.

Gaspar-Gaspar and Edgar appealed to the Board of Immigration Appeals. They argued that the immigration judge erred in denying asylum and withholding of removal because the record showed that Gaspar-Gaspar had suffered persecution in Guatemala "on the account of being an indigenous person." *Id.* at 15. In their appellate brief, they acknowledged that both asylum and withholding of removal "share[d] a core requirement," which was "a nexus between the persecution and a protected ground." *Id.* at 16. They stated that it was "well-settled" that an applicant established the "required nexus" when he demonstrated that a protected ground "was or will be *a central reason* for" persecution. *Id.* at 17 (emphasis added) (internal quotation marks omitted). Nowhere in their brief

to the Board did they argue that a different, less-demanding nexus standard applied to a withholding-of-removal claim.

The Board affirmed the immigration judge's determination that Gaspar-Gaspar was not eligible for asylum or withholding of removal. It stated that to be entitled to either asylum or withholding of removal, Gaspar-Gaspar had to establish, among other things, a "nexus" between the harm that he experienced or feared and a protected ground. *Id.* at 4. To establish the requisite nexus for both the asylum and withholding-of-removal claims, the Board explained, Gaspar-Gaspar had to show that a protected ground was "a central reason" for the claimed past or future harm. *Id.* (internal quotation marks omitted).

The Board concluded that the immigration judge's finding that Gaspar-Gaspar had failed to establish a nexus was not clearly erroneous. Because he had not established a "nexus between the harm he experienced and fears and a protected ground," the Board concluded that he was not entitled to asylum or withholding of removal. *Id.* at 5.

Gaspar-Gaspar and Edgar now petition this Court for review.

## II.

"We review the decision of the Board." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009) (internal quotation marks omitted). We review the decision of the immigration judge "to the extent that the Board expressly adopted" the immigration judge's opinion. *Id.* (internal quotation marks omitted). We review

*de novo* the Board's conclusions of law. *Id.* And we review its factual determinations under a substantial evidence standard, which requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). Findings of fact may be reversed "only when the record compels a reversal." *Id.* at 1027. "[T]he mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Id.*

## III.

On appeal, Gaspar-Gaspar and Edgar challenge the Board's decision denying the application for asylum and withholding of removal. Regarding asylum, they argue that the record "compel[led] a finding" that Gaspar-Gaspar's past persecution and fear of future persecution was on account of "his indigenous Mayan race or ethnicity." Petitioners' Br. 12–13. And as to withholding of removal, they say that the Board erred because it applied the wrong standard to evaluate whether there was a sufficient nexus between Gaspar-Gaspar's protected characteristics and the threats he faced if removed to Guatemala. We address each issue in turn.

## A.

We begin with the challenge to the denial of the asylum application. Under the Immigration and Nationality Act ("INA"), an undocumented immigrant who is present in the United States may apply for asylum. 8 U.S.C. § 1158(a)(1). The government has the discretion to grant asylum if an applicant establishes that he is a

"refugee." *Id.* § 1158(b)(1)(A). A refugee is a person "who is unable or unwilling to return to" his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A).

To be eligible for asylum, an applicant must, "with specific and credible evidence," show "(1) past persecution on account of a statutorily listed factor" or "(2) a well-founded fear that the statutorily listed factor will cause future persecution." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (internal quotation marks omitted). Persecution is an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (alteration adopted) (internal quotation marks omitted).

We have described the requirement that an applicant must show that any past or future persecution was, or would be, "on account of a protected basis" as a "nexus" requirement. *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1158 (11th Cir. 2019) (internal quotation marks omitted). To satisfy the nexus requirement, an applicant must show that a protected characteristic—for example, his race or membership in a particular social group—"was or is 'at least one central reason' for his persecution." *Id.* (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). A central reason is one that "is essential to the motivation of the persecutor." *Sanchez-Castro v. U.S. Att'y Gen.*, 998 F.3d 1281, 1286 (11th Cir. 2021) (internal quotation marks omitted). "In other words, the protected ground cannot play a

minor role in the [applicant's] past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm." *Id.* (internal quotation marks omitted). Evidence showing the applicant was the victim of criminal activity or acts of private violence does not establish persecution based on a statutorily protected ground. *Ruiz*, 440 F.3d at 1258.

Gaspar-Gaspar and Edgar challenge the Board's determination that Gaspar-Gaspar failed to satisfy the nexus standard for the asylum claim. They argue that the record established that Gaspar-Gaspar's status as an indigenous Mayan was one central reason for his persecution in Guatemala. We disagree.

We cannot say that this record compels a conclusion that Gaspar-Gaspar's Mayan race played a central role in the gang's decision to target him. The record before us shows that (1) Gaspar-Gaspar is an indigenous Mayan person, (2) he was harmed by members of the Mara-18 gang in Guatemala, and (3) some criminals in Guatemala target indigenous Mayan people. The only evidence showing that Gaspar-Gaspar was targeted because he was Mayan was his testimony that he believed the gang members had targeted him because of his race. Even assuming a factfinder could conclude based on this record that there was a nexus, "the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi*, 386 F.3d at 1027. We simply cannot say that the record required the agency to conclude that when the gang targeted Gaspar-Gaspar it was motivated

by his race. We thus conclude that substantial evidence supported the Board's decision.

**B.**

We now turn to the challenge to the denial of Gaspar-Gaspar's application for withholding of removal. The INA prohibits the government from removing a noncitizen in the United States to a country where his "life or freedom would be threatened . . . because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To be entitled to withholding of removal, an applicant must show that it is more likely than not that he would be persecuted or tortured upon his return to the country in question. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004). We have recognized that to be entitled to withholding of removal, an applicant must meet a nexus requirement. *See Perez-Sanchez*, 935 F.3d at 1158.

In their petition, Gaspar-Gaspar and Edgar argue that the Board applied too demanding a nexus standard when evaluating the withholding-of-removal claim. They say that to be eligible for withholding of removal, Gaspar-Gaspar needed to show only that his race would be "a reason," as opposed to "one central reason," for the threat he would face if returned to Guatemala. Petitioners' Br. 19. They acknowledge that this Court in a published opinion adopted the "one central reason" standard to evaluate nexus for a withholding-of-removal claim. But they urge us to reject the reasoning of our precedent, saying that we overlooked that the nexus

requirement for withholding-of-removal claims is "distinct" from the nexus requirement for asylum claims. *Id.* at 20.

Before we reach the merits of this challenge, we must consider whether Gaspar-Gaspar and Edgar exhausted their administrative remedies.[2] The INA provides, in relevant part, that a "court may review a final order of removal only if" the noncitizen "has exhausted all administrative remedies available . . . as of right." 8 U.S.C. § 1252(d)(1). This exhaustion requirement is satisfied when a noncitizen "previously argued the core issue now on appeal before the" Board. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (internal quotation marks omitted). "Requiring exhaustion allows the [Board] to consider the niceties and contours of the relevant arguments, thereby fully considering the petitioner's claims and compiling a record which is adequate for judicial review." *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (alterations adopted) (internal quotation marks omitted).

We cannot reach the merits of Gaspar-Gaspar and Edgar's challenge regarding the nexus requirement that applies to withholding-of-removal claims because they failed to exhaust administrative remedies. Although they now argue that an applicant for

---

[2] We previously treated the INA's exhaustion requirement as a jurisdictional bar. But the Supreme Court recently held that this exhaustion requirement is not jurisdictional but, rather, a claim-processing rule. *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023). Because it is a claim-processing rule, we must enforce the exhaustion requirement where, as here, the government properly asserts it. *See Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023).

withholding of removal establishes the requisite nexus if he shows that a protected ground would be a reason—as opposed to a central reason—for any threats he would face if removed, they did not raise this argument to the Board. Instead, they told the Board that it was "well-settled" that the "one central reason" standard applied to withholding-of-removal claims. AR at 17 (internal quotation marks omitted). Because they did not raise this "core issue" in their petition before the Board, we conclude that they failed to exhaust administrative remedies. *See Indrawati*, 779 F.3d at 1297 (internal quotation marks omitted); *see also Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1196 n.8 (11th Cir. 2021) (concluding that petitioner failed to exhaust argument about the proper nexus standard when petitioner failed to raise the argument before the Board).

But even if Gaspar-Gaspar and Edgar had adequately raised this issue before the Board and exhausted administrative remedies, we would have to deny their petition. As they acknowledge, we previously adopted the "one central reason" standard to evaluate whether an applicant established a sufficient nexus for a withholding-of-removal claim. *See Sanchez-Castro*, 998 F.3d at 1286. Gaspar-Gaspar and Edgar argue that the reasoning in *Sanchez-Castro* is flawed because the panel overlooked an argument about why a less stringent nexus standard should apply in the withholding-of-removal context. But under our prior panel precedent rule, we are bound by *Sanchez-Castro*. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1303 (11th Cir. 2001) ("[W]e categorically reject any exception to the prior panel precedent rule based upon a perceived defect in the

prior panel's reasoning or analysis as it relates to the law in existence at that time.").

**PETITION DENIED.**